# United States Court of Appeals for the Federal Circuit

---

**CONLEY F. MONK, JR., JAMES BRIGGS, TOM COYNE, WILLIAM DOLPHIN, JIMMIE HUDSON, LYLE OBIE, STANLEY STOKES, WILLIAM JEROME WOOD, II,**
*Petitioners-Appellants*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-1094

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-1280, Chief Judge Margaret C. Bartley, Judge Coral Wong Pietsch, Judge William S. Greenberg, Judge Michael P. Allen, Judge Amanda L. Meredith, Judge Joseph L. Toth, Senior Judge Robert N. Davis, Senior Judge Mary J. Schoelen.

---

Decided: October 20, 2020

---

LYNN K. NEUNER, Simpson Thacher & Bartlett, LLP, New York, NY, argued for petitioners-appellants. Also argued by ARJUN MODY, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, CT. Also represented by MICHAEL JOEL WISHNIE, JADE FORD, RENEE

A. BURBANK.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

BENJAMIN C. BLOCK, Covington & Burling LLP, Washington, DC, for amicus curiae National Veterans Legal Services Program. Also represented by ISAAC CHAIM BELFER, POOJA SHAH KOTHARI, ROBERT TYLER SANBORN; JORDAN JOACHIM, New York, NY; BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

JONATHAN FREIMAN, Wiggin and Dana LLP, New Haven, CT, for amici curiae Will A. Gunn, Mary Lou Keener.

JASON L. LICHTMAN, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY, for amici curiae Pamela Bookman, Maureen Carroll, Sergio J. Campos, Brooke Coleman, Robin Effron, Deborah Hensler, Helen Hershkoff, Alexandra D. Lahav, David Marcus, Jerry L. Mashaw, Elizabeth G. Porter, Briana Rosenbaum, Judith Resnik, Michael D. Sant'Ambrogio, Elizabeth M. Schneider, Joanna C. Schwartz, Shirin Sinnar, Adam Zimmerman.

ANGELA K. DRAKE, Veterans Clinic, University of Missouri School of Law, Columbia, MO, for amicus curiae National Law School Veterans Clinic Consortium. Also represented by STACEY-RAE SIMCOX, Faculty Office, Stetson University College of Law, Gulfport, FL.

_____

Before NEWMAN, LOURIE, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* NEWMAN.

Additional views filed by *Circuit Judge* REYNA.

NEWMAN, *Circuit Judge*.

Petitioners Conley F. Monk, Jr. and seven other veterans petitioned the United States Court of Appeals for Veterans Claims ("Veterans Court"), requesting class action certification for the class of veterans whose disability claims had not been resolved by the Board of Veterans Appeals ("BVA" or "Board") within one year of the filing of a Notice of Disagreement ("NOD"). Petitioners define the proposed class as:

> [I]ndividuals who . . . applied for and [were] denied VA [Veterans Affairs] disability benefits, in whole or in part; [and] timely filed an NOD upon denial of an original, reopened, or remanded claim; [and] the VA has failed to render a decision on the pending appeal within twelve (12) months of the date of the NOD.

Amended Petition at 7 (Dec. 20, 2017) (ECF No. 57). Petitioners request judicial action to compel the Secretary of Veterans Affairs to decide all pending appeals within one year of receipt of a timely NOD. Petitioners stated that the proposed class constituted at least 470,000 claimants, and was increasing.

The Veterans Court took the matter *en banc*, and requested Petitioners to separate or limit the requested class action into issues that meet the "commonality" standard of Federal Rule of Civil Procedure 23(b)(2):

> A class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Petitioners declined to limit the requested class action, stating that "systemic delay" exists in the VA claims system, and broad judicial remedy is required. The Veterans Court then denied the requested class certification,[1] stating that "[t]he relief the petitioners seek does not satisfy Rule 23(b)(2)'s standard as there is no single injunction that provides relief to the class as a whole." Vet. Ct. Op. at 181. This appeal followed.

## DISCUSSION

While this case was pending in the Veterans Court, congressional hearings were held in 2016 and 2017 concerning the delays in VA claim processing. Legislation was enacted on August 23, 2017, called the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, § 2(x), 131 Stat. 1105 (2017) ("AMA" or "VAIMA"). In their appeal to this court, Petitioners acknowledged this legislation but did not discuss its impact on their concerns. We requested further briefing, and Petitioners, the government, and *amicus curiae* National Law School Veterans Clinic Consortium filed additional briefs. Petitioners and the *amicus* state that important problems remain; the government reports progress and optimism.

### A. The AMA Enactment in 2017

Before the AMA, the system for processing veterans' disability claims required multiple steps, each of which was subject to delays, starting with the procedures in the Regional Office, then the filing of the NOD, then the issuance of a Statement of the Case ("SOC"), then the filing of VA Form 9, then the appeal certification and transfer to the BVA, then the submission of evidence, then a hearing, often warranting remand and additional evidence and

---

[1]    *Monk v. Wilkie*, 30 Vet. App. 167 (2018) ("Vet. Ct. Op.").

another hearing, and eventually the decision of the BVA and a possible reconsideration decision. The average completion time is "nearly five years" according to the government, and seven years according to Petitioners. Petitioners state that delay of ten years is not unusual.

The AMA made several changes in VA procedures, and eliminated or simplified the steps after filing of the NOD. As described by the government:

> Rather than forcing all claimants through one long queue, the AMA allows claimants to choose an appellate path—(1) higher-level review, (2) supplemental claim, (3) board review with a hearing and opportunity to submit additional evidence, (4) board review without a hearing, but with an opportunity to submit additional evidence, or (5) board review without a hearing or additional evidence—in accord with their priorities for their particular appeal. *See* 38 U.S.C. §§ 5104C(a)(1), 7105(b)(3).

Gov't Supp. Br. 2–3. The government states that the AMA is structured to avoid the major sources of delay that were inherent in the legacy system:[2]

> For instance, instead of the legacy system's continual open record and continual duty to assist— which cause the board to reintroduce thousands of cases reaching the end of the appeals process back into the appellate queue for additional development every year—the AMA provides discrete

---

[2]    The pre-AMA appeals process is called the "legacy system." The AMA applies to claims that receive an initial decision after February 19, 2019. 38 C.F.R. § 19.2. Veterans within the legacy system are authorized to "opt in" to the AMA system.

> periods for assistance and evidence submission, with effective date protections for the claimant. *Compare* 38 U.S.C. §§ 5103A, 7105(e) (2016), *with* 38 U.S.C. §§ 5103A(e), 5104B(d), 5110(a)(2), 7113 (2020).

Gov't Supp. Br. 3 (internal citation omitted). The government also explains that instead of waiting for preparation and issuance of the SOC and then having to file an appeal that must be certified and transferred to the BVA, claimants can file their NOD directly with the BVA. *Id.* at 3–4.

The *amicus* reports that "the average length of time between the filing of an appeal at the Regional Office and the Board's disposition of the appeal was more than three years—1,273 days—for legacy claims." Amicus Supp. Br. 2 (citing Dep't of Veterans Aff. Board of Veterans Appeals, *Annual Report Fiscal Year (FY) 2019* 25) ("Annual Report FY 2019") (emphasis omitted). The government summarizes: "Given that the SOC, certification, and board docketing stages for legacy appeals take 1,077 days on average to complete, the AMA's authorization for direct NOD filings with the board has the potential to remove up to 1,077 days of processing time for the average claimant." Gov't Supp. Br. 4 (citing *Annual Report FY 2019* at 25). The government states:

> This careful structuring of the AMA system has, at least so far, vastly improved appeal processing times. As of May 31, 2020, AMA claimants who appeal to the board are receiving decisions, on average, in 229 days. *See* Appeals Modernization Act Reporting, May 2020 Monthly Report, Part 1 – AMA (E, G, J), row 7, column C.

Gov't Supp. Br. 4.

## B. The Proposed Class Action

Petitioners continue to urge that judicial intervention is required, for the AMA does not apply to legacy appeals,

and over 200,000 legacy appeals remain pending.  The government states that the AMA provides that legacy claimants may "opt in" to the AMA system.  The government states that "virtually every single putative class member has had an opportunity to leave the broken legacy appeals system and enter an AMA system that 'expedite[s] VA's appeals process' while also 'protecting veterans' due process rights.'  H.R. Rep. 115-135, at 2.  Some have declined that opportunity, and that is their right."  Gov't  Supp. Br. 6 (alteration in original).  The government states that the VA sent a letter to almost every legacy claimant to inform them of the legislative change and to provide instructions concerning procedures, *id.*, and Petitioners report that only 19.2% of the legacy claimants opted in to the AMA in the first and second quarters of FY 2019.  Pet'r Supp. Br. 11.

The government states that "the AMA has been fully operational for 17 months; and, between RAMP [Rapid Appeals Modernization Program] and the AMA's opt-in, virtually every putative class member has had an opportunity to take advantage of Congress's chosen remedy."  Gov't Supp. Br. 7.  The government reports the hiring of 605 additional appeal adjudicators in FY 2019, and states that: "While the original briefs in this case referred to 470,000 pending appeals, the latest available data reflects that 217,918 legacy appeals remain pending: 141,783 appeals that have not yet received a board decision and 76,135 appeals remanded by the board," and "[b]ased on current projections, all legacy appeals will receive a board decision by December 2022."  *Id.* at 12 n.10 (citing U.S. Dep't of Veterans Aff., *Periodic Progress Report on Appeals* 4–5, 29 (Feb. 2020 Update) and Dep't of Veterans Aff., *Appeals Modernization Act Reporting: May 2020 Monthly Report*).[3]

---

[3]    The AMA requires the VA to provide regular updates on appeal processing, including resource and staffing levels, productivity and timeline projections, and

However, Petitioners continue to press for a class action for the purpose of setting a deadline for legacy appeals, arguing that the AMA's provision to opt-in is inadequate, and judicial intervention is essential. Pet'r Supp. Br. 10–12 ("For veterans already suffering lengthy delays, opting in to the AMA, an untested and unfamiliar system, risked even further costs and uncertainties.").

The government states that the concept of a fixed period was considered at the legislative hearings, and that the consensus was that a deadline system was not a preferable solution, in view of the variety of veterans' disability claims and individual needs and procedures.

On review of the information provided by both sides, we share the view stated in *Sugrue v. Derwinski*, 26 F.3d 8, 12–13 (2d Cir. 1994), that when Congress has "carefully crafted" a "comprehensive remedial structure," that structure warrants evaluation in practice, before judicial intervention should be contemplated.

## C.  The Question of "Commonality"

The Veterans Court observed that the rule of "commonality" requires that a proposed class action presents a common question that is capable of a common legal answer. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–52 (2011). *See also Martin v. O'Rourke*, 891 F.3d 1338, 1345–47 (Fed. Cir. 2018) ("unreasonable delay" inquiry must examine, *inter alia*, the context of the delay, the particular agency action at issue, and the effect of delay on a particular veteran).

---

information on opt-ins. Data are publicly reported, *e.g.*, U.S. Dep't of Veterans Aff., *Periodic Progress Report on Appeals* (Feb. 2020 Update), https://benefits.va.gov/benefits/docs/appeals-report-202002.pdf.

Petitioners did not respond to the Veterans Court's request for further definition in search of commonality. And Petitioners do not elaborate on the remedy they seek for legacy claimants, other than a one-year deadline. The *amicus* states that "it is too early to tell if the AMA provides veterans with accurate and timely decisions," Amicus Supp. Br. 1, and therefore the courts must intervene in the legacy system for veterans who have not opted into the AMA. The *amicus* mentions the government's projection that all legacy appeals will be resolved by the end of 2022, and is skeptical concerning whether this goal can be achieved. Thus the *amicus* urges that judicial intervention by class action is needed. *Id.* at 2, 10. The *amicus*, like Petitioners, suggests no remedy other than imposition of a judicially imposed one-year deadline.

The *amicus* presented the experience of a veteran's clinic in attempting to proceed under an opt-in election, showing repeated VA errors in administration of the purportedly more efficient AMA procedures. This distressing case history does not provide reassurance, whether it is an isolated example, or widespread. However, neither does this information enlighten the commonality concern that troubled the Veterans Court.

The Veterans Court held that there was inadequate specificity of issues on which the court could reasonably proceed by class action. Petitioners ask this court to hold that the proposed class of all legacy claimants "satisfies commonality under Rule 23(a)(2)," Pet'r Supp. Br. 12. Petitioners fault the Veterans Court for not allowing them to amend their petition after the *en banc* argument, in order to "move for certification of subclasses as necessary." Pet'r. Supp. Br. 6 n.3. However, we are not advised as to further analysis of what legal remedy is sought for any subclass.

We agree with the Veterans Court that Petitioners have not met the commonality requirement, or suggested a path to meeting this requirement. Petitioners have not

demonstrated Veterans Court error or shown a reasonable basis for remand.

## AFFIRMED

Each party shall bear its costs.

# United States Court of Appeals for the Federal Circuit

---

**CONLEY F. MONK, JR., JAMES BRIGGS, TOM COYNE, WILLIAM DOLPHIN, JIMMIE HUDSON, LYLE OBIE, STANLEY STOKES, WILLIAM JEROME WOOD, II,**
*Petitioners-Appellants*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-1094

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-1280, Chief Judge Margaret C. Bartley, Judge Coral Wong Pietsch, Judge William S. Greenberg, Judge Michael P. Allen, Judge Amanda L. Meredith, Judge Joseph L. Toth, Senior Judge Robert N. Davis, Senior Judge Mary J. Schoelen.

---

REYNA, *Circuit Judge*, additional views.

I am pleased to join my colleagues in the views expressed by Judge Newman in our majority opinion. I write separately to emphasize that while the proposed class does not meet the commonality requirement, class certification is available and should be afforded to veterans upon a showing of commonality.

The VA concedes that veterans, "[w]hen they [appeal]—whether they know it or not—will enter into a process that takes years, sometimes decades, to complete . . . jump[ing] through hoops, absorb[ing] dozens of letters, fill[ing] out confusing paperwork, and learn[ing] to live with waiting." J.A. 466. This delay is unacceptable. In addition to learning to live with waiting, the nation's veterans must carry the burden of compounding health and financial implications. While we note the recent attempts to reform the broken VA claims system, J.A. 467, the new process does not provide a remedy for the 200,000 veterans that have claims pending under the legacy system. The government asserts that "virtually every putative class member has had an opportunity to take advantage of Congress's chosen remedy." Gov't Supp. Br. 7. But the AMA opt-in was *optional*, and veterans with claims pending under the legacy system were not required to switch to the new system in order to receive swift adjudication. In fact, Congress explicitly prohibited the AMA from taking effect until the VA could guarantee that legacy claims would be "timely addressed." Gov't Supp. Br. 9 n.9. The fact remains that veterans should not have to switch to the new system to expect and receive timely resolution of their claims. It remains to be seen whether the new AMA system will resolve these deeply troubling delays. But in the meantime, the availability of class certification to address such delays remains available and important as ever.